**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 96-60079
Summary Calendar
_____


NATIONAL LABOR RELATIONS BOARD,

                                        Petitioner,

                    VERSUS

                    BORDEN, INC.,

                                        Respondent.


_____

Application for Enforcement of an Order of
the National Labor Relations Board
(16-CA-17467)
_____

August 1, 1996

Before SMITH, DUHÉ, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


The National Labor Relations Board (the "Board") seeks enforcement of its order requiring that Borden, Inc., recognize the United Food and Commercial Workers International Union as the exclusive bargaining agent for Borden's production, maintenance, vault, and warehouse employees ("the unit") at Borden's Sulphur

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Springs, Texas, facility.  We grant the application and enforce the order.

I.

On March 8, 1995, the Board conducted an election at the facility to determine whether the unit wished to be represented by the union for collective bargaining purposes.  On the morning of the election, the Board agent responsible for supervising the election arrived at the polling area without the standard portable voting booth.  Rather than postponing the election, the agent had Borden construct a makeshift voting booth.

Borden constructed the booth by placing a piece of cardboard on a chair and then placing the chair against a wall near a corner of the room.  This formed a three-sided voting booth:  The booth was enclosed on two sides by the walls of the room, enclosed on the third side by the cardboard partition, and open on the fourth side. A table was placed inside the booth to allow voters to mark their ballots.

The room also contained an observers' table.  Observers from the Board, Borden, and the union sat at the table, and voters awaiting their turn at the ballot box stood beside the table.  The observers' table was located at least eight feet behind the open side of the voting booth and six feet from the adjacent wall. Those seated at the table thus were able to see into the booth at a forty-five-degree angle, making the interior of the booth

2

partially visible to observers and those waiting to vote.

The union won the election by two votes. Borden challenged the election, claiming that it was not conducted with the necessary secrecy because the voting booth was not completely enclosed. The Board ordered a hearing to resolve the challenge.

The hearing officer found that the election was satisfactory. The officer determined that the table inside the voting booth did not occupy the entire booth and that voters were able to walk around the table to a completely concealed part of the booth to ensure privacy when marking their ballots.[1] Furthermore, the officer noted that none of Borden's witnesses had testified that they observed how any employee had voted.[2] One of Borden's witnesses testified that he could see only the arms and back of a person standing in the voting booth, while a second witness testified that he could see the whole person in the booth but did not believe that he could see the ballot. Based on this evidence and the physical layout of the voting area, the officer recommended that the Board reject Borden's challenge.

The Board adopted the hearing officer's findings and certified the union as the exclusive bargaining representative. To obtain judicial review, Borden refused to recognize the union. The union

---

[1] This was a hotly disputed issue at the hearing. Borden contended that the table took up the entire voting booth and that voters therefore were unable to vote in private. Borden does not challenge this finding on appeal.

[2] In fact, three of Borden's witnessesSSone an observer and the other two votersSStestified that they could not see how any voter had marked his ballot.

3

then filed a complaint with the Board, which ordered Borden to extend recognition.  The Board filed this application for enforcement of its order.

## II.

Borden argues that the Board erred by upholding the election despite the absence of a completely enclosed voting booth.  We review the Board's decisions pertaining to representation elections only for abuse of discretion.[3]

In representation elections, the board must take "a secret ballot of the employees."  29 U.S.C. § 159(e)(1).[4]  The Board did not abuse its discretion in finding that the election satisfied this requirement.  The recommendations of the hearing officer, adopted by the Board, were based on consideration of the physical

---

[3]     Congress has given the Board wide discretion in the conduct and supervision of representation elections, and the Board's decision warrants considerable respect from reviewing courts.  Our review is limited to determining whether the Board has reasonably exercised its discretion, and if the Board's decision is reasonable and based upon substantial evidence in the record considered as a whole, our inquiry is at an end.  Representation elections are not lightly set aside.

*NLRB v. Hood Furniture Mfg. Co.*, 941 F.2d 325, 328 (5th Cir. 1991) (citations omitted); see also *NLRB v. Heavy Lift Serv., Inc.*, 607 F.2d 1121, 1123, (5th Cir. 1979) ("[T]he Board's long experience in representation matters requires us to give special deference to its decisions regarding the effect of challenged conduct on the results of an election."), *cert. denied*, 449 U.S. 822 (1980); *NLRB v. W.R. Grace & Co.,* 571 F.2d 279, 282 (5th Cir. 1978) ("[T]he Board has been vested with wide discretion in representation matters, and its decision warrants special respect by reviewing courts.").

[4]  The Board's own regulations also require that "[a]ll elections shall be by secret ballot."  29 C.F.R. § 102.69(a).

4

layout of the voting booth, the location of the observer table, and the absence of testimony that anyone was able to see how any voter marked his ballot.

Borden calls our attention to *Brennan v. Local 3489, United Steelworkers of Am.*, 520 F.2d 516 (7th Cir. 1975), *aff'd on other grounds*, 429 U.S. 305 (1977), in which the court found that a union election failed to meet the secret ballot requirement. *Local 3489* is easily distinguished on its facts,[5] however:

> A small table for marking ballots was placed three feet in front of an elevated officers' bench. Two members of the Election Committee were present throughout the 6:00 a.m. to 6:00 p.m. election. Most of the voting occurred during the last two hours of the day, when the voters were "jammed together * * * elbow to elbow." Up to 50 voters were in the room at one time. Many voters marked their ballots at the aforesaid table and could see each other's ballots as they were marked. Others marked their ballots against the walls, and their markings could also be observed by voters several feet away. No one was seen carrying a ballot to the back of the hall to vote, and some members deliberately "flaunted their votes." There was no encouragement of any members to take steps to prevent others from seeing their ballots.

*Id.* at 521-22. The voters in the Borden election unquestionably enjoyed far greater privacy than did voters in the *Local 3489* election. Furthermore, while some voters in the *Local 3489* election "deliberately flaunted their votes," there was no

---

[5] Although *Local 3489* involved an election for union officers rather than a representation election, it is not distinguishable on that basis. Both types of elections must be conducted by "secret ballots," though the secret ballot requirements are located in different statutes. *Compare* 29 U.S.C. § 159(e)(1) (requiring the board to take "a secret ballot of the employees") *with id.* at § 481(b) (requiring that unions elect officers "by secret ballot"). There is no basis for reading the two secret ballot requirements differently.

testimony that anyone had seen how a single voter marked his ballot in the Borden election.

The order of the National Labor Relations Board is ENFORCED.